JS-6

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JUAN CALDERON, on behalf of all others similarly aggrieved, | Case No. 5:20-cv-01875-JWH-SPx |
| Plaintiff, | **ORDER GRANTING MOTION OF PLAINTIFF JUAN CALDERON TO REMAND [ECF No. 12]** |
| v. | |
| PHYSICIANS FOR HEALTHY HOSPITALS, INC., a Delaware corporation; PETER BARONOFF, an individual; and DOES 1 to 50, inclusive, | |
| Defendants. | |

## I.  <u>INTRODUCTION</u>

On August 5, 2020, Plaintiff Juan Calderon, on behalf of all others similarly aggrieved, filed his Complaint for Violation of the Private Attorneys General Act, Cal. Lab. Code §§ 2698 *et seq.*, in Riverside County Superior Court.[1]  On September 11, 2020, Defendant Physicians for Healthy Hospitals, Inc. ("<u>Physicians</u>") removed the action to this Court.[2]  On October 13, 2020, Calderon filed a motion to remand, in which he contends that the Court lacks subject matter jurisdiction.[3]  For the reasons stated below, the Court **GRANTS** the Motion.

## II.  <u>BACKGROUND</u>

In his state court Complaint, Calderon accuses Physicians of violating various California labor laws.[4]  Calderon alleges that Physicians employed him "as a non-exempt employee with the job title of 'security guard.'"[5]  Among other things, Calderon avers that "[u]nder the Labor Code and IWC Wage Orders, Defendant was required to provide Plaintiff and similarly aggrieved employees with one 30-minute meal break free from all duties for all shifts longer than 5 hours, and a second 30-minute meal break free from all duties for all shifts longer than 10 hours."[6]  Calderon contends that Physicians "failed to

---

[1]     Compl. [ECF No. 1-4].  Calderon subsequently filed an amended complaint.  *See* First Am. Compl. [ECF No. 17].  The parties do not contend that the amended complaint affects the jurisdictional analysis, and jurisdiction is generally determined at the time of removal.  *See, e.g., Allen v. F.D.I.C.*, 710 F.3d 978, 984 (9th Cir. 2013) ("federal jurisdiction is determined at the time of removal").

[2]     Notice of Removal [ECF No. 1].

[3]     Mot. to Remand (the "<u>Motion</u>") [ECF No. 12].

[4]     *See generally* Compl.

[5]     *Id.* at ¶ 6.

[6]     *Id.* at ¶ 9.

1  provide Plaintiff and similarly aggrieved employees all required and/or fully

2  compliant rest periods, or compensation in lieu thereof."[7]

3      Calderon also alleges that Physicians "implemented a time rounding

4  system that systematically deprived Plaintiff and similarly aggrieved employees

5  of compensable hours worked because it resulted in understating hours worked

6  due to the rounding."[8]  "As a result, Defendant failed to pay Plaintiff and

7  similarly aggrieved employees for all hours worked at a rate no less than the

8  prevailing minimum wage, thereby violating California minimum wage laws,

9  including but not limited to Labor Code sections 1194-1199, and Wage

10  Order 4-2001, section 7."[9]  For the same reason, Calderon alleges that

11  Physicians failed to compensate employees for overtime as required by

12  California law.[10]  Calderon further alleges that Physicians failed to keep adequate

13  records, provide proper wage statements, or pay in a timely manner "all wages

14  due and payable to Plaintiff and other similarly aggrieved employees."[11]

15      On September 11, 2020, Physicians removed the case to this Court.  In its

16  Notice of Removal, Physicians states, "Plaintiff's claims are artfully pled claims

17  for breach of the collective bargaining agreement under Section 301 of the Labor

18  Management Relations Act of 1947 (LMRA), 61 Stat. 156, 29 U.S.C. § 185

19  ('Section 301')."[12]  Physicians therefore argues that this Court has federal

20  question jurisdiction, even though the Complaint facially states claims under

21  California law only.[13]  *See* 29 U.S.C. § 185 ("Suits for violation of contracts

22  between an employer and a labor organization representing employees in an

---

[7]      *Id.* at ¶ 11.

[8]      *Id.* at ¶ 12.

[9]      *Id.*

[10]      *Id.*

[11]      *Id.* at ¶¶ 13, 14, & 16.

[12]      Notice of Removal at ¶ 6.

[13]      *See id.*

-3-

1   industry affecting commerce as defined in this chapter, or between any such
2   labor organizations, may be brought in any district court of the United States
3   having jurisdiction of the parties, without respect to the amount in controversy
4   or without regard to the citizenship of the parties.").

5       Physicians maintains that "Plaintiff filed a PAGA action on behalf of all
6   others similarly aggrieved, a vast majority of whom are employees represented
7   by the California Nurses Association ('CNA'), the Services Employees
8   International Union, United Healthcare Workers-West ('SEIU'), or the
9   Teamsters Local No. 1932 ('Teamsters')."[14]  According to Physicians, the
10  respective collective bargaining agreements (the "CBAs") for SEIU, CNA, and
11  the Teamsters "provide the wages, hours of work, and working conditions, as
12  well as the premium rate for all overtime hours for employees covered by
13  them."[15]  Physicians also contends that resolution of this action "requires
14  interpretation of these collective bargaining agreements," preempting state law
15  and providing the Court with federal question jurisdiction under the LMRA.[16]
16  For Calderon's claims that are not subject to federal question jurisdiction,
17  Physicians argues that the Court should exercise supplemental jurisdiction
18  under 28 U.S.C. § 1367(a).[17]

19      On October 13, 2020, Calderon filed the instant Motion, and on
20  October 30, 2020, Physicians filed its Opposition.[18]  Calderon's Opposition
21  papers include a declaration from Michelle Bird, Physicians' Vice President of
22  Human Resources.[19]  The Bird Declaration attaches CBAs for the Physicians
23

---

24  [14]    *Id.* at ¶ 7.
25  [15]    *Id.* at ¶ 25.
26  [16]    *Id.* at ¶ 8.
    [17]    Opp. to Motion (the "Opposition") [ECF No. 18] at 10.
27  [18]    *Id.*
    [19]    Decl. of Michele Bird in Supp. of Opposition (the "Bird Declaration")
28  [ECF No. 18-1].

-4-

employees represented by CNA, SEIU, or the Teamsters.[20]  According to Bird, "[t]he CNA CBA has, throughout the PAGA period, provided all bargaining unit members with wages that are more than 30 percent above the applicable state minimum wage."[21]  Bird further testifies that two CBAs between SEIU and Physicians cover the applicable PAGA period and that both of these CBAs "provide wages more than 30 percent above the applicable minimum wage for the vast majority of employees covered by them during the applicable PAGA period."[22]  Finally, Bird declares that the CBA between Physicians and the Teamsters "provides wages more than 30 percent above the applicable minimum wage for the vast majority of employees covered by it during the applicable PAGA period."[23]

The Court conducted a hearing on the Motion on November 20, 2020. At the hearing, the parties acknowledged that the CBAs do not cover all employees that are part of the PAGA class; indeed, Calderon worked as a security guard, a position not covered by any CBA.[24]

### III.  LEGAL STANDARD

"Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (footnote omitted).  The removal statute is strictly construed "against removal jurisdiction," and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).  "The 'strong

---

[20]     *Id.* at ¶¶ 3-6.
[21]     *Id.* at ¶ 4.
[22]     *Id.* at ¶ 5.
[23]     *Id.* at ¶ 6.
[24]     *See* Motion at 7:21-24.

1    presumption' against removal jurisdiction means that the defendant always has
2    the burden of establishing that removal is proper." *Id.*

3          The district courts have "original jurisdiction of all civil actions arising
4    under the Constitution, laws, or treaties of the United States." 28 U.S.C.
5    § 1331. "The presence or absence of federal-question jurisdiction is governed by
6    the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists
7    only when a federal question is presented on the face of the plaintiff's properly
8    pleaded complaint." *Caterpillar*, 482 U.S. at 392. "The rule makes the plaintiff
9    the master of the claim; he or she may avoid federal jurisdiction by exclusive
10   reliance on state law." *Id.*

11         In certain cases, however, "federal-question jurisdiction will lie over
12   state-law claims that implicate significant federal issues." *Grable & Sons Metal*
13   *Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 312 (2005). A corollary
14   to the well-pleaded complaint rule is the "complete pre-emption doctrine,"
15   which provides that "once an area of state law has been completely pre-empted,
16   any claim purportedly based on that pre-empted state law is considered, from its
17   inception, a federal claim, and therefore arises under federal law." *Id.* at 386–
18   87; *see also Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1151 (9th Cir. 2019) ("a
19   civil complaint raising claims preempted by § 301 raises a federal question that
20   can be removed to a federal court").

21         "Although § 301 contains no express language of preemption, the
22   Supreme Court has long interpreted the LMRA as authorizing federal courts to
23   create a uniform body of federal common law to adjudicate disputes that arise
24   out of labor contracts." *Curtis*, 913 F.3d at 1151. "While § 301 preemption
25   furthers important interests, the Supreme Court has stressed that '§ 301 cannot
26   be read broadly to pre-empt nonnegotiable rights conferred on individual
27   employees as a matter of state law.'" *Id.* at 1152 (quoting *Livadas v. Bradshaw*,
28   512 U.S. 107, 123 (1994)).

The Ninth Circuit has developed a two-step test to determine whether § 301 preempts a state law claim.  *Id.*  Step one is to ask if the cause of action involves a right that "'exists solely as a result of the CBA.'"  *Id.* (quoting *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032 (9th Cir. 2016).  If so, the claim is preempted.  *Id.*  If not, "we proceed to the second step and ask 'whether a plaintiff's state law right is substantially dependent on analysis of [the CBA],' which turns on whether the claim cannot be resolved by simply 'look[ing] to' versus 'interpreting' the CBA."  *Id.* at 1153 (quoting *Kobold*, 832 F.3d at 1033).  "Interpretation" is narrowly construed, and "'claims are only preempted to the extent there is an active dispute over "the meaning of contract terms."'"  *Id.* (quoting *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 921 (9th Cir. 2018)).  "Accordingly, a state law claim may avoid preemption if it does not raise questions about the scope, meaning, or application of the CBA."  *Id.*

## IV.  ANALYSIS

### A.    Whether the Right Exists Solely as a Result of the CBA

Under the Ninth Circuit's two-step test to determine whether § 301 preempts a state law claim, step one is to ask if the cause of action involves a right that "'exists solely as a result of the CBA.'"  *Curtis*, 913 F.3d at 1152 (quoting *Kobold*, 832 F.3d at 1032).

In *Curtis*, the plaintiff alleged that his employer "violated California labor law by failing to recognize" the time he spent off duty on an offshore oil platform as "'hours worked.'"  *Id.* at 1153.  Section 510(a) of the California Labor Code  "provides a default rule for overtime."  *Id.*  But § 514 of the California Labor Code provides that

> Sections 510 and 511 do not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all

overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage.

"[T]he default definition of overtime and overtime rates in section 510 does not apply to an employee who is subject to a qualifying CBA." *Curtis*, 913 F.3d at 1153–54. Thus, if a CBA meets the requirements of section 514, the right to overtime "'exists solely as a result of the CBA,' and therefore is preempted under § 301." *Id.* at 1154 (quoting *Kobold*, 832 F.3d at 1032). Based upon this reasoning, the Ninth Circuit held in *Curtis* that the plaintiff's claim was preempted. *Id.*

Physicians argues that *Curtis* is controlling,[25] stating in its Notice of Removal that "a vast majority" of the employees on whose behalf this action was brought are represented by three different unions and are "subject to multiple collective bargaining agreements."[26] According to the Bird Declaration, for most workers the minimum wage is "more than 30 percent above the applicable state minimum wage."[27] The CBAs attached to the Bird Declaration also provide alternative work arrangements.[28] Thus, according to Physicians, "Sections 510 and 511" of the California Labor Code "do not apply" because the majority of employees are "covered by a valid collective bargaining agreement" that "expressly provides for the wages, hours of work, and working conditions of the employees" and that "provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage." Cal. Lab. Code § 514. Physicians therefore contends that some of the rights at issue in this

---

[25]   Opposition at 5:16-6:25.
[26]   Notice of Removal ¶ 7.
[27]   Bird Declaration at ¶¶ 4 & 5.
[28]   *See* Notice of Removal ¶¶ 12-18.

1    lawsuit arise under the applicable CBAs rather than state law, providing this

2    Court with subject matter jurisdiction under the LMRA.[29]

3        Physicians' argument, however, fails to address the fact that not all

4    employees are provided with the rights required to exempt them from §§ 510

5    and 511 under § 514 of the California Labor Code.  In *Huffman v. Pac. Gateway*

6    *Concessions LLC*, No. 19-CV-01791-PJH, 2019 WL 2563133 (N.D. Cal. June 21,

7    2019), the plaintiff brought a putative class action that alleged violations of the

8    California Labor Code.  The defendant removed the case based upon the

9    contention that the claims at issue were preempted by the LMRA.  *Id.* at *2.

10   The court analyzed whether the claims were preempted where the CBA at issue

11   met "Section 514's substantive requirements with respect to [the plaintiff] but

12   not with respect to other employees covered by it."  *Id.* at *4.

13       The proposed class in *Huffman* included employees governed by various

14   CBAs.  *Id.* at *1.  Although the CBA that applied to the plaintiff met the

15   requirements of § 514 with respect to the plaintiff, it did not meet all of the

16   substantive requirements with respect to other employees governed by the CBA.

17   *Id.* at *5.  The court considered the plain language of the statute and noted that

18   while the term "employees" in § 514 is not defined, it "stands in stark

19   contradistinction to the earlier reference to 'an employee.'"  *Id.*  The court

20   reasoned that "[t]he plural term 'those employees' refers back the statute's

21   earlier use of 'the employees' which . . . means all employees covered by the

22   CBA."  *Id.* at *5.

23       The *Huffman* court concluded that "a CBA must satisfy Section 514's

24   substantive requirements ***with respect to all covered employees*** in order to render

25   Section 510 inapplicable to any particular employee."  *Id.* at *6 (emphasis

26   added); *see also Sarmiento v. Sealy, Inc.*, No. 18-CV-01990-JST, 2019 WL

27

28   ───────────
     [29]    *See, e.g.*, *id.* at ¶¶ 11-19.

-9-

3059932, at *7 (N.D. Cal. July 12, 2019) (agreeing with *Huffman*'s reasoning). Similarly, in *Rooney v. Save Mart Supermarkets*, No. 2:20-cv-00671-JAM-FEB, 2020 WL 3819481, at *2 (E.D. Cal. July 8, 2020), the defendant argued that § 514 does not require all putative class members to earn 30% more than the state minimum wage. *Id.* at *2. The court adopted "the reading of the statute's plain language in *Huffman*, to find that the CBA does not meet Section 514's requirements because it does not meet the requirements with respect to ***all*** employees." *Id.* at *3 (emphasis added).

Here, the parties do not dispute that not all of the CBAs at issue meet the § 514 requirements for all employees on whose behalf this action was brought. The Bird Declaration states that the SEIU CBAs "provide wages more than 30 percent above the applicable minimum wage for the ***vast majority*** of employees covered by them during the applicable PAGA period."[30] Similarly, Bird testifies that the Teamsters CBA "provides wages more than 30 percent above the applicable minimum wage for the ***vast majority*** of employees covered by it during the applicable PAGA period."[31] These statements impliedly concede that not all employees who are part of the PAGA class are provided with the wage required under § 514, even if those employees are covered by a CBA.[32] Moreover, Physicians concedes that Calderon himself is not covered by ***any*** CBA because no such agreement applies to his position of security guard.[33] In view of the foregoing, "the Court finds 'plaintiff's asserted cause of action involve[s] a right conferred upon an employee by virtue of state law, not by a CBA.'" *Id.* (quoting *Huffman*, 2019 WL 2563133, at *6).

---

[30]     Bird Declaration at ¶ 5 (emphasis added).

[31]     *Id.* at ¶ 6 (emphasis added).

[32]     In addition, the removing defendant bears the burden of establishing that removal is proper. *See, e.g.*, *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006).

[33]     Motion Hr'g Tr. 7:14-8:1.

**B.**     <u>**Whether the State Law Right Is Substantially Dependent on the CBA**</u>

If the "asserted cause of action" does not involve a right that exists solely as a result of the CBA, "we proceed to the second step and ask 'whether a plaintiff's state law right is substantially dependent on analysis of [the CBA],' which turns on whether the claim cannot be resolved by simply 'look[ing] to' versus 'interpreting' the CBA." *Curtis*, 913 F.3d at 1153 (9th Cir. 2019) (quoting *Kobold*, 832 F.3d at 1033). "'[I]n the context of § 301 complete preemption, the term "interpret" is defined narrowly—it means something more than "consider," "refer to," or "apply."'" *McCray v. Marriott Hotel Servs., Inc.*, 902 F.3d 1005, 1011 (9th Cir. 2018) (quoting *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1108 (9th Cir. 2000)) (alteration in original).

For example, in *Huffman*, the defendant argued that the plaintiff's overtime claim was "substantially dependent upon interpretation and analysis of his CBA's wage provisions because California's overtime law requires payment of premium wages calculated from each employee's 'regular rate of pay' (Cal. Lab. Code § 510)," which could "only be determined by reviewing the CBA's wage structure." *Huffman*, 2019 WL 2563133, at *6. The court found that the relevant provisions of the CBA at issue did not require interpretation. *Id.* at *7. The defendant therefore failed to show that the court had subject matter jurisdiction. *Id.* at *8.

Here, Physicians asserts that Calderon's representative claims are "substantially dependent on an analysis of the collective bargaining agreements."[34] Physicians states that "Plaintiff's overtime claim is dependent on this Court's interpretation of Articles in the CBAs referring to the regular rate of pay and differentials that are included in that regular rate agreed upon

---

[34]     Notice of Removal ¶ 20.

under the CBAs for such premium overtime rates."[35]  "For instance, Article 3 of the SEIU CBAs provide that an employee's overtime compensation is to be calculated in accordance with their regular rate of pay."[36]  "Articles 9 and 11 of the current SEIU CBA," in turn, "discuss the differentials that a covered employee will be paid for their assigned shifts."[37]  Similarly, "Article 5 of the CNA CBA provides that:  'All RNs serving as relief Charge Nurses shall receive a 5% pay differential.'"[38]

Physicians, however, does not explain how or why any provision of the applicable CBAs is ambiguous such that the Court would need to interpret it rather than to merely apply it.  "[R]eading and applying relevant, unambiguous provisions of the CBA require[s] the court to only 'look to,' rather than 'interpret,' the agreement."  *McCray*, 902 F.3d at 1012 (quoting *Kobold*, 832 F.3d at 1040); *see also Alaska Airlines*, 898 F.3d at 927 ("reliance on and reference to CBA-established or CBA-defined terms of employment do not make for a CBA dispute if there is no disagreement about the meaning or application of any relevant CBA-covered terms of employment").  Moreover, the "speculative possibility" that a dispute may arise later as to the meaning of a provision in one of the CBAs does not provide the Court with jurisdiction at this stage of the case.  *McCray*, 902 F.3d at 1013.  Physicians has therefore "failed to meet its burden to demonstrate that this [C]ourt has jurisdiction of the action."  *Huffman*, 2019 WL 2563133, at *8.

---

[35]  *Id.* at ¶ 21.
[36]  *Id.*
[37]  *Id.*
[38]  *Id.*

## V.  <u>CONCLUSION</u>

For the foregoing reasons, Calderon's Motion to Remand is **GRANTED**. This case is **REMANDED** to the Riverside County Superior Court.

**IT IS SO ORDERED.**

Dated: March 8, 2021

_____
John W. Holcomb
UNITED STATES DISTRICT JUDGE